### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

**DUENTA ELLIS**                                                                   **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 5:14-cv-103-MTP**

**FRANK SHAW, ET AL.**                                                            **DEFENDANTS**
### OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [39] and Plaintiff's Motions for Summary Judgment [42] [45] [51] [58].  Having considered the Motions, the record, and the applicable law, the Court finds that Defendants' Motion [39]should be granted, Plaintiff's Motions [42] [45] [51] [58] should be denied, and this action should be dismissed with prejudice.

### BACKGROUND

On November 6, 2014, Plaintiff Duenta Ellis, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983.  The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at Wilkinson County Correctional Facility ("WCCF").[1]  In his complaint and as clarified in his testimony at the *Spears*[2] hearing, Plaintiff asserts claims against Defendants Frank Shaw, Candice Walker, Drucilla Dukes, Gabriel Walker, and Ella Scott for their alleged failure to protect him from an attack by a fellow inmate.[3]

According to Plaintiff, on September 5, 2014, while he was housed in the segregation

---

[1] Plaintiff is currently incarcerated at Central Mississippi Correctional Facility.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] Plaintiff also named Tammy Davis as a defendant, but on April 17, 2015, the Court dismissed Plaintiff's claim against Davis. *See* Order [30].

unit at WCCF, correctional officers, Candice Walker and Drucilla Dukes, were escorting him

from his cell to the recreation area when another inmate, Rodriquez Thomas, escaped from his

cell and attacked Plaintiff.[4]  Plaintiff alleges that he was handcuffed at the time of the attack.

Defendants Walker and Dukes allegedly fled once the attack began and called a "code black,"

which directs all available officers to respond to an emergency event.

According to Plaintiff, additional officers arrived within forty-five to sixty seconds and

stopped the attack.  Plaintiff alleges that as a result of the attack, he sustained injuries to his

head, which required stitches.  Plaintiff asserts that Defendants Walker and Dukes should have

stayed with him and defended him during the attack.  Plaintiff alleges that Defendants knew

Inmate Thomas was a dangerous inmate.  Plaintiff also alleges that he had been in physical

altercations with Inmate Thomas in the past and that Thomas had threatened to kill him.

Plaintiff alleges that Frank Shaw, the warden at WCCF, failed to ensure that the security

monitors were working properly on the day of the attack.  According to Plaintiff, the monitors

should have alerted officers that the door to Inmate Thomas's cell was not locked properly.

Plaintiff alleges that a WCCF employee told him that the security monitors were malfunctioning

on the day of the attack.  Plaintiff also alleges that Ella Scott, the captain of the segregation unit,

failed to conduct security checks on the day of the attack, during which Scott would have

discovered that Thomas's cell door was not properly locked.

Finally, Plaintiff alleges that Gabriel Walker, deputy warden and head of security at

WCCF, failed to ensure that only properly qualified individuals were working as correctional

---

[4]  During the *Spear* hearing, Plaintiff referred to his attacker as "Tony Rodriguez," but
the Mississippi Department of Corrections ("MDOC") incident report identifies the inmate as
Rodriquez Thomas. (Incident Report [39-2].)

officers in the segregation unit.  Plaintiff alleges that Candice Walker was only eighteen years old at the time of the attack and that MDOC policy requires officers in the segregation unit be twenty-one years of age.

As relief, Plaintiff seeks $10,000 in damages.  On August 4, 2015, Defendants' filed their Motion for Summary Judgment [39], and Plaintiff has responded to the Motion. (Responses [50] [53]; Reply [55].)  Additionally, Plaintiff filed four Motions for Summary Judgment [42] [45] [51] [58].

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

*Exhaustion of Administrative Remedies*

Defendants argue that Plaintiff failed to exhaust his administrative remedies.  The Prison

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any

available administrative remedies prior to filing suit under 42 U.S.C. § 1983.  "Whether a

prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v.*

*Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  The Fifth Circuit held that "[s]ince exhaustion is a

threshold issue that courts must address to determine whether litigation is being conducted in the

right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion

without the participation of a jury." *Id*. at 272.  Because exhaustion is an affirmative defense,

Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available

administrative remedies. *Id*. at 266.

The Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement.

*Johnson v. Ford*, 261 Fed. App'x 752, 755 (5th Cir. 2008) (citing *Days v. Johnson*, 322 F.3d

863, 866 (5th Cir. 2003)).  A prisoner cannot satisfy the exhaustion requirement "by filing an

untimely or otherwise procedurally defective administrative grievance or appeal" because

"proper exhaustion of administrative remedies is necessary."  *Woodford v. Ngo*, 548 U.S. 81, 83-

84 (2006).  It is not enough to merely initiate the grievance process or to put prison officials on

notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v.*

*Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Mississippi Code § 47-5-801 grants the Mississippi Department of Corrections

("MDOC") the authority to adopt an administrative review procedure at each of its correctional

facilities.  Pursuant to this statutory authority, the MDOC has set up an Administrative Remedy

Program ("ARP") through which an inmate may seek formal review of a complaint relating to

any aspect of his incarceration. *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS HANDBOOK[5] at

Ch. VIII.  The ARP is a two-step process.[6]

Pursuant to the ARP, an inmate is required to submit his initial grievance or request, in

writing, to the Legal Claims Adjudicator within thirty days of an alleged incident.  If, after

screening, the request is accepted into the ARP, it is forwarded to the appropriate official, who

will investigate and issue a First Step Response.  If the inmate is unsatisfied with the First Step

Response, he may continue to the Second Step by using ARP Form ARP-2 and sending it to the

Legal Claims Adjudicator.  A final decision will be made by the Superintendent, Warden, or

Community Corrections Director.  If the inmate is not satisfied with the Second Step Response,

he may file suit in state or federal court. *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS

HANDBOOK at Ch. VIII.

Defendants assert that this action should be dismissed because Plaintiff failed to properly

exhaust his administrative remedies.  As previously mentioned, Plaintiff alleges that the attack

occurred on September 5, 2014.  The record demonstrates that on September 8, 2014, Plaintiff

submitted a grievance alleging that, on the night prior to the attack, an officer opened Inmate

Thomas's cell and allowed him to manipulate his door so that he would be able to escape from

his cell. (ARP Grievance [39-7] at 3.)[7]  In the grievance, Plaintiff did not mention any of the

Defendants or allege that any officer failed to protect him during the attack.

---

[5] *See* http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx. (Last visited February 8, 2016).

[6] Effective September 19, 2010, the ARP was changed from a three-step process to a two-step process. *See Threadgill v. Moore*, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

[7] Specifically, Plaintiff stated that an "officer on night ship [sic] open his door with the key an [sic] let him regg [sic] it to come out on me."

On September 30, 2014, Defendant Walker responded to the grievance and informed Plaintiff that "[t]here has been no evidence regarding a staff member allowing another offender's cell door to be manipulated." (First Step Response [39-7] at 5.)  On October 23, 2014, Defendant Shaw completed a second step response and informed Plaintiff that "[y]ou have not provided any evidence/proof to substantiate . . . the allegation you made against staff on opening the offender door with a key to attack you." (Second Step Response [39-7] at 7.)

On October 6, 2014, Plaintiff submitted a second grievance.  In this grievance, Plaintiff complained that Defendant Dukes and Walker failed to protect him from the attack.  This grievance, however, was rejected as untimely because it was submitted more than thirty days after the alleged event. (ARP Grievance and Response [39-8].)

The record demonstrates that Plaintiff failed to properly exhaust his administrative remedies.  Plaintiff's first grievance contained specific allegations against an officer on the night shift.  Plaintiff did not present any allegations against Defendants.  There is no mention of any wrongdoing committed by the officers who were accompanying him at the time of the attack. The Fifth Circuit has stated that "[i]f an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know–and a prisoner could ordinarily be expected to provide–details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).  The allegations contained in Plaintiff's original grievance were insufficient under the circumstances to put prison officials on notice of the specific claims raised against the Defendants in this case. Thus, Plaintiff did not present sufficient information to exhaust his administrative remedies with

regard to the claims in this case.

Plaintiff's second grievance contained specific allegations against Defendants Dukes and Walker.  However, this grievance was rejected as untimely.  As previously explained, a prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary."  *Woodford*, 548 U.S. at 83-84.

In response to Defendants' argument that Plaintiff failed to properly exhaust, Plaintiff asserts that he was "not in his right stage of mind at the time" due to the attack. (Reply [55].) The Fifth Circuit has held that an inmate properly exhausted the administrative remedies that were personally available to him when a serious injury prevented him from timely filing a grievance. *See Days v. Johnson*, 322 F.3d 863, 865 (5th Cir. 2003).  The Fifth Circuit, however, went on to emphasize that the holding was "limited to the narrow facts of this case." *Id*. at 868. The reason offered by Plaintiff for his failure to timely submit a grievance regarding Defendants Dukes and Walker is not availing.  The record demonstrates that his injuries did not prevent him from timely submitting a grievance.  The record demonstrates that Plaintiff was able to, and in fact did, timely submit a grievance.  However, Plaintiff's timely grievance concerned the wrongful acts of an officer on the night shift, not the Defendants.([39-7] at 3.)  Because Plaintiff failed to properly complete the steps of the ARP, Defendants' Motion for Summary Judgment [39] should be granted.

Nevertheless, the Court further finds that Defendants are entitled to summary judgment on the merits of Plaintiff's claims.  As discussed below, Plaintiff's claims against Defendants should be dismissed with prejudice.

*Failure to Protect*

Plaintiff asserts that Defendants failed to protect him from harm at the hands of his fellow inmate.  Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by fellow inmates. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).  However, every injury suffered by one prisoner at the hands of another does not amount to a constitutional violation by prison officials responsible for prisoners' safety. *Farmer*, 511 U.S. at 834.  To prevail on a failure to protect claim, Plaintiff must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

Deliberate indifference consists of the official being aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Deliberate indifference "'is an extremely high standard to meet.'"  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  Negligent failure to protect an inmate does not rise to the level of a constitutional violation. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law."  *Farmer*, 511 U.S. at 837.

First, Plaintiff claims that Defendants Walker and Dukes should have stayed with him and defended him during the attack by Inmate Thomas.  The actions and/or inactions of Defendants Walker and Dukes do not rise to the level of deliberate indifference.  "No rule of constitutional law requires unarmed officials to endanger their own safety on order to protect a

prison inmate threatened with physical violence." *Longoria v. Texas*, 473 F.3d 586, 593-94 (5th

Cir. 2006). Defendants Walker and Dukes were unarmed and were not required to endanger

their own safety. *See Hutchinson v. Orleans Parish Prison*, 2013 WL 632358, *5 (E.D. La. Jan.

30, 2013) ("[A] response to an inmate's complaints about his safety that includes deferring the

matter briefly for responsive action, as [Defendants] did in immediately summoning backup

officers in response to the complaining inmate's specific request, 'fulfills an official's protective

duties under the Eighth Amendment.'" (quoting *Longoria*, 473 F.3d at 594))).

In his Response [53] to Defendants' Motion for Summary Judgment [39], Plaintiff asserts

that Defendants Walker and Dukes violated prison policy by not carrying a chemical agent for

defense. However, "[a] violation of prison regulations, without more, does not give rise to a

federal constitutional violation." *Jones v. Hudnell*, 210 Fed. App'x. 427, 428 (5th Cir. 2006)

(citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986)).

Second, Plaintiff claims that Defendant Scott failed to conduct security checks on the day

of the attack, during which Scott would have discovered that Thomas's cell door was not

properly locked. Even if the Court accepts Plaintiff's allegations as true and finds that

Defendant Scott failed to check the cell doors, such does not establish that the Defendant Scott

recognized the existence of a substantial risk to Plaintiff's safety. Plaintiff has presented no

evidence that Defendant Scott was aware that Thomas's cell door was not securely locked. In

his sworn testimony, Scott states that he did not have any personal knowledge regarding

problems with prisoners' cell doors malfunctioning or being jammed in the segregation unit.

(Scott Affidavit [39-6].) Scott's alleged failure to check the cell doors was, at most, negligence.

*See Torres v. Summers*, 2011 WL 3100339, at *5 (S.D. Tex. July 25, 2011); *Stowe v. Enlers*,

2015 WL 4527365, at \*4 (S.D. Miss. July 27, 2015); *Willis v. Lacox*, 2012 WL 441198, at \*5 (E.D. Tex. Feb. 10, 2012); *Lonoaea v. CCA*, 665 F. Supp. 2d 677, 684 (N.D. Miss. 2009).

Third, Plaintiff claims that Defendant Shaw failed to ensure that the security monitors were working properly on the day of the attack.  Plaintiff alleges that  a WCCF employee told him that the security monitors were malfunctioning on the day of the attack.  As an initial matter, the Court points out that such an unsubstantiated assertion cannot defeat summary judgment. *See Turner*, 476 F.3d at 343.  Moreover, even if the Court accepts Plaintiff's allegations as true, such does not establish that Defendant Shaw recognized the existence of a substantial risk to Plaintiff's safety.  Plaintiff has failed to come forward with evidence demonstrating that Shaw knew the security monitors were malfunctioning, failed to repair them prior to the attack, and knew that Thomas's cell door was not properly secure. *See Navarre v. LeBlanc*, 2014 WL 2003334, at \*\*3-4 (M.D. La. May 15, 2014); *Grissom v. Patterson*, 1993 WL 560256, \*3 (5th Cir. Dec. 27, 1993) ("Wantonness, in the context of a failure-to-protect claim, requires that the defendant be conscious of the inevitable or probable results of [his] failure to take preventative action.") (internal quotations and citations omitted; brackets in original).

Finally, Plaintiff claims that Defendant Gabriel Walker failed to ensure that only properly qualified individuals were working as correctional officers in the segregation unit.  Plaintiff alleges that Candice Walker was only eighteen year old at the time of the attack and that MDOC policy requires officers in the segregation unit be twenty-one years of age.  As previously mentioned,  "[a] violation of prison regulations, without more, does not give rise to a federal constitutional violation." *Jones*, 210 Fed. App'x. at 428 (citing *Hernandez*, 788 F.2d at 1158). For Defendant Gabriel Walker to be liable based upon hiring Candice Walker, Plaintiff must

establish that "adequate scrutiny of [Candice Walker's] background would have led a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire [her] would be the deprivation of a third party's federally protected right ." *Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997).  "There must be a strong connection between the background of the particular applicant and the specific violation alleged." *Gros v. City of Grand Prairie*, 209 F.3d 431, 434 (5th Cir. 2000).

Plaintiff has failed to establish that Candice Walker's alleged age–eighteen–should have led Gabriel Walker to conclude that the plainly obvious consequence of her presence in the segregation unit would be her failure to protect Plaintiff.  Moreover, the Court has determined that Candice Walker did not violate Plaintiff's constitutional rights.  Therefore, Plaintiff has failed to establish a constitutional violation by Gabriel Walker.

Plaintiff failed to present, and the record does not contain, summary judgment evidence that Defendants knew Plaintiff was under an imminent threat of harm and intentionally ignored the threat.  Thus, Defendants are entitled to judgment as a matter of law, and their Motion for Summary Judgment will be granted.

Plaintiff also filed four Motions for Summary Judgment [42] [45] [51] [58].  In his Motions, Plaintiff restates many of the allegations made in his complaint and argues that he is entitled to summary judgment because Defendants violated MDOC policy and procedure by placing unqualified officers in the segregation unit, fleeing during the attack, being unarmed during the attack, failing to conduct security checks, failing to ensure that the security monitors were working properly, and generally failing to protect him.  The Court has addressed these allegations and found that Plaintiff failed to establish constitutional violations. *See supra* pp.9-11

Plaintiff also argues that he has a right to be protected from any kind of harm. (Motion [58] at 1.)  The Court previously explained that every injury suffered by one prisoner at the hands of another does not amount to a constitutional violation by prison officials responsible for prisoners' safety. *Farmer*, 511 U.S. at 834.  Plaintiff must show that Defendants were deliberately indifferent to a substantial risk of serious harm. *Jones*, 188 F.3d at 326.  Plaintiff has failed to make this showing.  Thus, Plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law, and his Motions for Summary Judgment will be denied.

IT IS, THEREFORE, ORDERED that:

1.      Defendants' Motion for Summary Judgment [39] is GRANTED,

2.      Plaintiff's Motions for Summary Judgment [42] is DENIED,

3.      Plaintiff's Motions for Summary Judgment [45] is DENIED,

4.      Plaintiff's Motions for Summary Judgment [51] is DENIED,

5.      Plaintiff's Motions for Summary Judgment [58] is DENIED,

6.      This action is dismissed with prejudice, and

7.      A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED, this the 26th day of February, 2016.

s/ Michael T. Parker
United States Magistrate Judge